UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
       )
      vs.      )      Cause No. 1:25-CR-589
       )
WALTER BRZOWSKI,      )
       )
      Defendant.      )

## <u>OPINION AND ORDER</u>

Defendant, Walter Brzowski, was fined $25,000 by this Court's Executive Committee for committing a "willful fraud on the court" after forging the Chief Judge's signature on an order and then submitting it into the record in his civil case. He was later charged criminally under 18 U.S.C. § 505 for those same actions. The difficult question presently before me is whether his subsequent prosecution violates the Fifth Amendment's Double Jeopardy clause. I think it does. As explained in this opinion, I find the Executive Committee's $25,000 fine was imposed, at least in substantial part, based on the conclusion that Brzowski committed fraud on the court. And because a violation of 18 U.S.C. § 505 also inherently constitutes fraud on the court, Count One violates the Double Jeopardy Clause. Count One of the Indictment will therefore be dismissed. The other ten counts of the indictment will remain pending against Brzowski.

## <u>Background</u>

The odyssey of Walter Brzowski's interactions with this Court goes back a quarter of a century. It all started in 2001 when Brzowski's wife began divorce

proceedings against him in Illinois state court. *See In re Brzowski*, 798 F. App'x 22 (7th Cir. 2020). The state court dissolved his marriage and gave custody of the children to the ex-wife. Between 2003-2007, Brzowski brought nine lawsuits in federal court related to his state divorce proceedings. All were dismissed for failure to state a claim or lack of subject matter jurisdiction.

On September 20, 2007, the Executive Committee for the Northern District of Illinois[1] issued an order in Case No. 1:07 CV 5613 enjoining Brzowski from filing new civil actions without leave. *See In re: Walter J. Brzowski*, Case No. 1:07 CV 5613 at DE 1. After Defendant filed two more cases without leave, on September 18, 2008, the Executive Committee entered an order finding his filing practices to be burdensome and ordered the clerk to destroy any papers submitted by Brzowski. [*Id.*, DE 17.] A few months later, on February 5, 2009, the Executive Committee entered an order relieving the Clerk's office from accepting or returning Brzowski's phone calls due to his "verbally abusive and profane" language. [*Id.*, DE 19.]

Undeterred, over the next three years, Brzowski continued apace with a barrage of frivolous filings and appeals. On February 9, 2012, the Executive Committee entered an order addressing Brzowski's history with the court and noting his persistence in advancing the same frivolous argument. [*Id.*, DE 68.] The Court found Brzowski "has not shown that he will be able to responsibly litigate any case in the Northern District of

---

[1] At the March 4, 2026 hearing, defense counsel explained that the Executive Committee is composed of the Chief Judge and Clerk of Court, along with five active judges, and the Chief Magistrate Judge.

Illinois" and, instead, "has merely demonstrated his inclination to continue to file harassing lawsuits in which he advances the same frivolous arguments that we have rejected numerous times." *Id.* Consequently, the Court extended the September 18, 2008 order. *Id.*

Despite that order, nearly a decade came and went with the Defendant repeatedly submitting filings to the district court without permission, along with several appeals as well. *See generally Id.* at DE 69-159. All of which prompted the Executive Committee, on December 27, 2021, to issue another order warning Defendant that continued violation of the Court's order may lead to further sanctions, including monetary sanctions, additional filing restrictions, or a contempt of court filing. [*Id.*, DE 158.]

Brzowski took umbrage, and submitted a "Stern Rebuttal Reply" claiming the Court's order of December 27, 2021 was "void" and "unconstitutional" because it "posed a threat against a U.S. private citizen[.]" [*Id.* at DE 159.] The Executive Committee was not impressed, and on January 31, 2022, the Court entered an order requiring Defendant to "respond in writing within 14 days why he should not be sanctioned for failure to comply with Executive Order." *Id.* DE 161. The docket reflects no response to that order from Brzowski.

On April 20, 2022, the Executive Committee issued an order sanctioning Brzowski "$500 for submitting frivolous documents after being warned that he would be furthered sanctioned if he continued to do so." [*Id.*, DE 163.] The Court ordered

3

Defendant to "tender a check payable to the Clerk of Court for the full amount of sanction" and stated that until he paid this sanction "the Clerk of Court shall return unfiled any papers submitted by him or on his behalf." *Id.* Uncowed, Brzowski continued to submit additional filings with the Court after being sanctioned, so the Court ordered (once again) the Clerk of Court to "return unfiled any papers submitted by" defendant until he paid his fine. [*Id.*, DE 171.] But Brzowski persisted nevertheless. *Id.*

On March 15, 2023, the Executive Committee issued a further warning that additional sanctions would be imposed if he continued to violate orders. [*Id.*, DE 171.] Defendant (of course) continued to submit filings. So on July 14, 2023, the Executive Committee issued another show cause as to why Brzowski should not be additionally sanctioned. [*Id.*, DE 177.] The show cause order was signed by then Chief Judge Rebecca R. Pallmeyer.

On July 27, 2023, Defendant filed a response captioned "Respondents Stern Response Against the Void July 14, 2023 'Order' Counter Claim of: 'Rule to Show Cause' Against Seventh Circuit Federal Chief Judge Rebecca R. Pallmeyer." [Attached to this case as DE 48-1.] In his rambling 8-page broadside, Brzowski repeats his frivolous claims about his state court divorce proceeding and asserts he didn't have to "seek out, kiss-ass permission from any brutal, vicious Federal Judge" to file his claims. [*Id.* at 3.] He went on to say his restricted filer status violated due process of law and he intended to argue this at any in-person hearing before the "three named Federal

4

moron" judges who he accused of "hid[ing] behind worthless *sua sponte* B.S. orders." [*Id.* at 4.] Brzowski then launched a personal attack on Judge Pallmeyer and concluded with a "Countering Rule to Show Cause." In sum, in Brzowski's view of things, it was Chief Judge Pallmeyer who needed to show cause, not him. [*Id.* at 8.]

Matters went from bad to worse on August 11, 2023 when Brzowski filed an additional document entitled "Legal Notice to Assert July 14, 2024 Revamped Order as Valid!" which purported to attach an order issued by the Executive Committee and signed by Judge Pallmeyer. [DE 48-2 in this case.] This filing was a complete forgery—it seems Brzowski deleted the entirety of the real show cause order from July, and drafted a fake order with the forged signature of Judge Pallmeyer affixed to it. [DE 48-2.] He then submitted the phony order to the Court. It was this action—the tendering into evidence a document with a counterfeit signature of a judge—that forms the basis for Count One of the indictment in this case. 18 U.S.C. § 505. (In succeeding months Brzowski is alleged to have done this ten more times leading to Counts 2-11 of the indictment. Those counts are not presently before me).

On September 27, 2023, the Executive Committee addressed Brzowski's filings and noted that the order attached to defendant's "Legal Notice" was "fraud." [Case No. 1:07 CV 5613, DE 182.] They found his submission "appear[ed] to be signed by Chief Judge Pallmeyer . . . [b]ut the Court did not prepare the 'order' . . . . Mr. Brzowski himself did." *Id.* It also concluded his "conduct in preparing a counterfeit order constitutes a willful fraud on the court," he had been warned on many occasions that

further violations of the court's orders may lead to further sanctions, and he had not provided a valid explanation of why he should not be sanctioned for his continued violations of the Executive Committee Order. *Id.* The Court ordered Brzowski to be "sanctioned an additional $25,000 for submitting frivolous documents after being warned that he would be further sanctioned if he continued to do so" and ordered him to "tender a check payable to the Clerk of Court for the full amount of the sanction." *Id*

A few months later, the Clerk of Court received a payment of $25,500 for the fines that were owed by Brzowski—$25,000 for the bogus order from August 2023 plus the earlier $500 sanction. How this all came about is an interesting side show to the main act. As best I understand, and as the parties explained during the hearing before me on March 4, 2026, evidently, Brzowski had previously sued Cook County under Section 1983 for unlawfully keeping him in prison (on another charge) for too long. He prevailed at trial, and received a sizable judgment against the County. But for reasons that remain entirely unclear to me, a large portion of that judgment—roughly, $200,000—was being held at the Cook County Clerk's Office in Brzowski's name.

When this Court's Executive Committee caught wind that Brzowski had sufficient funds at the Cook County Clerk's Office to satisfy the fines that had been levied against him, they sprung into action with a Rule to Show Cause. [Case No. 07 CV 5613, DE 192.] The Chief Judge (Chief Judge Kendall), ordered Brzowski to show cause why the Cook County Clerk of Court shouldn't be required to turn over $25,500 to the federal court, to satisfy the Brzowski's fines that were in arrears to the Northern District

of Illinois. *Id.*

Brzowski responded on February 5, 2025, February 7, 2025 and February 26, 2025. [*Id.* at DE 196, 197 and 198.]  Unimpressed with his responses, on March 12, 2025, the Executive Committee issued a Turnover Order to the Cook County Clerk of Court, who ultimately sent a check to the federal Clerk of Court in the sum of $25,500, thus satisfying Brzowski's debt to this Court.  [Case No. 07 CV 5613, DE 202.]

### Discussion

An 11 count indictment against Brzowski was brought on September 23, 2025. After all judges in the Northern District of Illinois were recused in this case, the matter was reassigned to me.  Count One— the only count presently at issue—specifically charges that Walter Brzowski:

> defendant herein, did knowingly forge the signature of Judge Rebecca R. Pallmeyer, a judge of the United States District Court for the Northern District of Illinois for the purpose of authenticating a document before said Court, to wit, an Executive Committee Order, and tender into evidence in the Northen District of Illinois in Case Number 07-CV-5613, Docket Entry 181, said Executive Committee Order bearing the forged signature of Judge Rebecca R. Pallmeyer, knowing such signature to be false; In violation of Title 18, United States Code, Section 505.

[DE 14 at 1.] As noted above, the other ten counts of the indictment relate to subsequent actions alleged to have been taken by Brzowski and are not presently at issue here.

Brzowski argues the Executive Committee's $25,000 sanction was punishment that triggers the protections of the Double Jeopardy Clause. [DE 34 at 4.] He reasons that the large fine levied against him was "plainly punitive" and selected as

7

punishment for his misbehavior. [*Id.* at 5.]  He also argues that Count One of the

indictment charges Brzowski with a lesser included version of the offense the Executive

Committee already doled out as punishment. [*Id.* at 8.]  In response, the government

contends the Double Jeopardy Clause is inapplicable because the charged violation of

Section 505 is not the same offense as imposing a sanction under the court's inherent

powers [DE 48 at 7], and, in any event, the Executive Committee's sanction is civil in

nature meaning Brzowski was never put in "jeopardy" in the first place. [*Id.* at 11.]

The Double Jeopardy Clause of the Fifth Amendment provides that no person

shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S.

Const. Amend. V.  There are three ways in which a defendant may be "twice put in

jeopardy of life or limb": (1) a subsequent prosecution after an acquittal; (2) a

subsequent prosecution after a conviction; and (3) being twice punished for the same

offense. *United States v. Hatchett*, 245 F.3d 625, 630 (7th Cir. 2001).  The last two options

are relevant to the present motion.  Brzowski argues that the Executive Committee's

$25,000 sanction and a conviction on Count One of the indictment would constitute a

violation of the Double Jeopardy Clause, because that would qualify as being punished

twice for the same offense—submitting a document to the court with a counterfeit

signature of a judge. [DE 34 at 8–10.]  In contrast, the government claims the Executive

Committee's use of its inherent authority in sanctioning Brzowski the $25,000 "was

plainly done to address defendant's repeated frivolous filings." [DE 48 at 10.]

There are two things to decide in getting to the bottom of the double jeopardy

argument. First is whether the extraction of $25,000 from Brzowski is more akin to a civil sanction or a criminal fine. If it was civil in nature, then he was never put in jeopardy at all by the actions of the Executive Committee and his motion to dismiss on double jeopardy grounds would have to be denied. If, on the other hand, the $25,000 payment was more akin to a criminal fine, then the question becomes whether the subsequent prosecution in Count One of the indictment is for the same or lesser included offense. I'll address each issue in turn below.

## A.   Whether the Fine Was Punitive

The government argues the Executive Committee's order sanctioning defendant $25,000 was civil in nature. If it is, a civil sanction cannot be the basis for a double jeopardy claim. [DE 48 at 12.] But the main case that the government relies on — *Hudson v. United States*, 522 U.S. 93 (1997) — is not at all on point. In *Hudson*, the Supreme Court looked to legislative intent to determine whether a *statutorily authorized* fine should be regarded as civil or criminal. *Id.* at 99. In that context, courts afford substantial deference to "a legislature's determination of whether a sanction is civil or criminal." *United States v. Lippitt*, 180 F.3d 873, 877 n.6 (7th Cir. 1999).

But a different test applies when a fine is imposed — not pursuant to a statutory scheme — but by order of a court. *See United Mine Workers v. Bagwell*, 512 U.S. 821, 838 (1994) (holding that "deference is less appropriate" in the context where a single judge, rather than a legislature, declares a particular sanction to be civil or criminal); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (to qualify

as civil, a court imposed "fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior"). In the context of judicial sanctions, a fine is civil only if it is: (a) compensatory; or (b) there is an opportunity to purge. *United Mine Workers*, 512 U.S. at 828–30.

The government does not argue that Brzowski was given the opportunity to purge the $25,000 fine. Indeed, the Turnover Order states that Brzowski did not respond to the rule to show cause by showing any basis to deny the entry of a turnover order, so the Executive Committee ordered the Cook County Clerk to remit the sum of $25,500 to the Clerk of the United States District Court. [DE 202, Case No. 1:07-cv-5613.] In other words, the funds have been turned over with no seeming ability for Brzowski to purge the fine.

Nor can the fine in this case be fairly characterized as compensatory. Although the government contends the order can't constitute criminal punishment because the Committee failed to provide Brzowski with appropriate procedural protections, this logic is utterly circular. [DE 48 at 12-13.] It cannot be that just because Brzowski did not get counsel and a hearing or other procedural protections, that his fine must necessarily be deemed civil. To avoid this nonsensical result, the Supreme Court "has never undertaken to psychoanalyze the subjective intent" behind a contempt order, but has instead "judged that conclusions about the purposes for which relief is imposed are properly drawn from an examination of the character of the relief itself." *Hicks v. Feiock*,

485 U.S. 624, 635–636 (1988). Put another way, the nature of the $25,000 fine levied against Mr. Brzowski must be assessed objectively rather than subjectively.

*Goodyear Tire* is instructive. In that case, the district court did not accord any criminal process to the sanctioned party and likely did not intend for its sanction award to constitute a punishment. 581 U.S. at 108–112. Despite that, the Supreme Court held that the fine was objectively punitive because the fine amount was not calculated to compensate for the losses that had been caused by the misconduct. *Id.* at 112–113. To get around *Goodyear Tire*, the government argues the Seventh Circuit has expressed "doubt" as to whether the "*Goodyear* requirement to calibrate the sanction to the bad-faith acts also applies to sanctions other than an award of attorneys' fees." *Fuery v. City of Chicago*, 900 F.3d 450, 468-69 (7th Cir. 2018). But *Fuery* did not involve monetary sanctions at all—rather, in that case the district court used its inherent authority to enter judgment for the defendants. The Seventh Circuit affirmed the dismissal of the suit as an appropriate inherent authority sanction. *Id.* at 469. In doing so, the Seventh Circuit noted the Supreme Court's decision in *United Mine Workers* established that "entering default judgment [] to penalize a party's failure to comply with the rules of conduct governing the litigation process . . . have never been considered criminal." *Id.* (quoting *United Mine Workers*, 512 U.S. at 833).

But fines are a different kettle of fish. As *United Mine Workers* itself holds, a court imposed non-compensatory fine is a form of punishment. *United Mine Workers*, 512 U.S. at 829 ("Where a fine is not compensatory, it is civil only if the contemnor is

11

afforded an opportunity to purge, such as with per diem fines and fixed, suspended fines."); *see also Goodyear Tire*, 581 U.S. at 108. To the extent that the government is suggesting that there is a constitutional distinction between punitive awards of attorneys' fees and the imposition of other punitive fines pursuant to the court's inherent authority, as noted by defense counsel, that suggestion is utterly implausible. Whether called an award of attorneys' fees or something else, a non compensatory monetary sanction is a form of punishment.

Finally, the government claims that, even assuming *Goodyear* applies, the Executive Committee "properly calibrated the sanction to defendant's bad-faith acts, such that the monetary damages were compensatory—or civil—in nature." [DE 48 at 13.] In support of this claim, the government notes that the amount of the sanction only needs to provide "rough justice." *Id.* (quoting *Goodyear*, 581 U.S. at 110). But, as *Goodyear Tire* makes clear, the "sanctioning court must determine which [costs] were incurred because of, and solely because of, the misconduct at issue." *Goodyear Tire*, 581 U.S. at 101; *see also United Mine Workers*, 512 U.S. at 834 (noting that fine was not compensatory where the court did not "attempt to calibrate the fines to damages caused by the union's contumacious activities or indicate that the fines were 'to compensate the complainant for losses sustained.'" (internal citation omitted)).

That did not occur here. The Executive Committee did not claim that the $25,000 fine was designed to compensate the court for losses caused by Mr. Brzowski's fraudulent filing, or losses associated with wasted court time. Nor is it plausible to

contend that mailing a false order allegedly signed by Judge Pallmeyer to Judge Pallmeyer herself resulted in $25,000 of damage—presumably the minute Judge Pallmeyer saw the bogus order she knew she did not author it and it was fake.

In any event, the government does not even try to establish that Mr. Brzowski's misconduct resulted in $25,000 worth of loss.  Instead, the government asserts that "the Court reasonably determined that a sanction of $25,000 was necessary to maintain the integrity of the judicial process and ensure compliance with its orders." [DE 48 at 14.]  Maybe this was the thought process behind the Executive Order.  But the Supreme Court has specifically explained that both of those two purposes identified by the government are punitive, not compensatory.  In *United Mine Workers*, the Supreme Court noted that a fine is punitive if it is intended "'to vindicate the authority of the court.'" *United Mine Workers*, 512 U.S. at 828 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). And coercive fines aimed at procuring future compliance with court orders will be deemed civil "only if the contemnor is afforded an opportunity to purge." *Id.* at 829. As a result, the government's proffered justification for the $25,000 fine amount demonstrates that this was a punitive sanction.

**B.     Whether Count One Charges a Lesser Included Version of the Offense that the Executive Committee Has Already Punished**

If I am correct that the $25,000 fine imposed on Brzowski was indeed punitive (and thus criminal) in nature, the next question is whether the subsequent prosecution under Count One should be dismissed under the Double Jeopardy Clause. In considering whether the Double Jeopardy Clause is in play here (and whether Brzowski

13

is being punished twice for the same offense), the Court must first determine whether the two instances constitute the same offense. [DE 48 at 7.]

This is a relatively easy inquiry when the two prosecutions involve violations of statutes. In that circumstance, the Court focuses on the elements of the offenses, rather than the underlying offense conduct. *Hatchett*, 245 F.3d at 631. This "same elements" test, which the Supreme Court set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), considers whether each offense requires proof of an element that is not required by the other. The Supreme Court explained the test as follows:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Blockburger*, 284 U.S. at 304. "Put differently, if Statute 1 requires an element that Statute 2 does not; and Statute 2 requires an element that Statute 1 does not, then the statutes constitute different offenses. Otherwise, they are the same offense for *Blockburger* purposes." *Boyd v. Boughton*, 798 F.3d 490, 494 (7th Cir. 2015); *see also United States v. Larsen*, 615 F.3d 780, 788 (7th Cir. 2010) (emphasis in original) ("In multiplicity challenges the *elements* of each offense—not the specific offense conduct—determine whether two offenses are the same for purposes of double jeopardy.").

Let's be honest about it: applying *Blockburger* to a case like ours is akin to cramming a square peg into a round hole. This is because *Blockburger* is a rule of

14

*statutory* construction.  So held the Supreme Court just a couple months ago.  *See Barrett v. United States*, 607 U.S. __, 146 S. Ct. 482, 491 (2026) (*Blockburger* is "a rule of statutory construction to help determine legislative intent."); *Whalen v. United States*, 445 U.S. 684, 691 (1980) (same). But our case doesn't involve two statutes—it involves instead the court's inherent authority to fine a litigant for committing a fraud on the court, on the one hand, and the government's ability to charge a crime in violation of a statute, on the other.  This makes for an apples and oranges comparison problem, and it's what makes the present undertaking a bit challenging.

Before diving in, let's take a step back for a minute and consider what exactly is the Court's inherent contempt power.  The Supreme Court has long recognized that courts "are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)); *see also Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) (holding that the court's ability to curb frivolous and abusive filer practices "is ample"). "This power, as well as the power 'to prevent abuse, oppression, and injustice' and 'to protect [the court's] own jurisdiction and officers,' are 'inherent.'" *Feehan v. Evers*, No. 22-2704, 2023 WL 4928520, at *5 (7th Cir. Aug. 2, 2023) (quoting *Krippendorf v. Hyde*, 110 U.S. 276, 283 (1884)).

These "powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). Among the Court's powers is "the capacity to sanction counsel for 'willful disobedience of a court order' and 'bad faith' conduct." *Schmude v. Sheahan*, 420 F.3d 645, 649-50 (7th Cir. 2005) (quoting *Chambers*, 501 U.S. at 45-46). The court's power also includes the ability to fine people who are found to be in criminal contempt for disobeying or resisting lawful orders of the court. *See* 18 U.S.C. § 401; *cf. In re Troutt*, 460 F.3d 887, 893 (7th Cir. 2006).

While the inherent power of the Court to sanction contemptuous behavior is quite broad, by contrast, 18 U.S.C. § 505 (the statute charged in Count One) criminalizes conduct that is much more narrow:

> Whoever forges the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined under this title or imprisoned not more than five years, or both.

Section 505 contains two means of violating the statute: (1) "the use of a false or counterfeit judicial signature to authenticate a document; and (2) the 'tender[ing] in evidence' of a document with a forged or counterfeit judicial signature." *United States v. Davis*, 26 F. App'x 100, 102 (4th Cir. 2001) (quoting 18 U.S.C. § 505; *see also* District of South Carolina Pattern Jury Instructions at 82 providing two sets of jury instructions for

16

Section 404 - one for forgery and one for tendering into evidence).

Brzowski relies heavily on *United States v. Dixon*, 509 U.S. 688 (1993), a consolidated case involving two defendants— Dixon and Foster. The case puts on display the difficulty of applying double jeopardy principles to a situation where a court uses its contempt power to sanction someone who is later prosecuted for the same underlying conduct. Because of the centrality of *Dixon* to this case, an extended discussion of it is necessary. The first defendant, Dixon, was held in criminal contempt for possessing with the intent to distribute cocaine while he was out on bond in another case. *Dixon*, 113 S.Ct. 2849. He was found guilty by a judge. Dixon then moved to dismiss the cocaine indictment on double-jeopardy grounds, and the court granted his motion.

The second defendant, Michael Foster, was subject to a civil protection order obtained by his estranged wife, Ana. The order required that he not assault, or in any manner threaten or physically abuse her. Over the next eight months, Ana filed three motions to have her husband held in contempt of the order. After a three day bench trial, Foster was found guilty of contempt. In order to prove contempt, the court stated that Ana would have "to prove as an element, first that there was a Civil Protection Order, and then [that] ... the assault as defined by the criminal code, in fact occurred." *Id.* at 693, 113 S.Ct. 2849 (brackets in original). The court found Foster guilty of the physical assaults but acquitted him on the threat allegations. The government later obtained an indictment charging Foster with, among other counts: threatening to injure

17

another for the three threats (for which he had been acquitted of contempt); simple assault for one of the physical assaults (for which he had been found guilty of contempt); and assault with intent to kill for the other physical assault (for which he had been found guilty of contempt). Foster filed a motion to dismiss, based on double jeopardy, and the trial court denied his motion. Foster appealed, and as in Dixon's case, the District of Columbia Court of Appeals held that Foster's subsequent prosecutions were barred by the Double Jeopardy Clause.

The *Dixon* and *Foster* cases were consolidated and appealed to the Supreme Court. The result was a splintered opinion demonstrating the difficulty of applying traditional double jeopardy principles when one of the offenses is a criminal contempt. The majority in *Dixon* applied *Blockburger*, but the Court divided on its application to the facts. (For a thorough and helpful description of *Dixon, see Boyd v. Boughton*, 798 F.3d 490, 495-97 (7th Cir. 2015)). Importantly, seven of the justices looked to the Court's "lesser-included-offense" jurisprudence as the most pertinent authority in analyzing this type of situation. But the fractured court then veered in multiple directions.

Two Justices (Scalia and Kennedy) concluded that a subsequent prosecution of Dixon would violate the Double Jeopardy Clause concluding that the drug charge constituted a "species of lesser included offense" to the contempt crime. *Dixon*, 509 U.S. at 698 (quotations and citations omitted). As for the other defendant (Foster), Justice Scalia also concluded that he could not be subsequently prosecuted for simple assault because the civil protection order required him not to "assault" his wife. *Id.* at 700. This

18

amounted to simple assault being a lesser-included offense of the contempt charge.  But

Foster's other charges did not constitute lesser-included offenses of Foster's contempt

conviction and were thus not blocked by the Double Jeopardy Clause. *Id.* at 700-02.

Justice White (joined by Justice Stevens in relevant part) also concluded that the

lesser-included-offense analysis barred Dixon's subsequent prosecution and Foster's

subsequent prosecution for simple assault. *Id.* at 733, 113 S.Ct. 2849 (White, J.,

concurring in the judgment in part and dissenting in part).  Unlike Justice Scalia,

however, Justice White concluded that the Double Jeopardy Clause barred all of the

charges brought against Foster, based on an application of the *Blockburger*

same-elements test. *Id.*

Then there was Chief Justice Rehnquist, joined by Justices O'Connor and

Thomas.  He concluded that none of the criminal prosecutions against Dixon or Foster

were barred under *Blockburger. Id.* at 713, 113 S.Ct. 2849 (Rehnquist, C.J., concurring in

part and dissenting in part).  The Chief Justice concluded that in comparing the

elements of criminal contempt—(I) a court order made known to the defendant,

followed by (ii) willful violation of that order— with the underlying substantive

offenses, there was simply no match as to the elements of each. Therefore, according to

Chief Justice Rehnquist, neither Dixon nor Foster were subjected to double jeopardy.

For his part, Justice Blackmun concluded that the interests served by the

contempt mechanism "are fundamentally different from those served by the

prosecutions of violations of the substantive criminal law." *Id.* at 743, 113 S.Ct. 2849

19

(Blackmun, J., concurring in the judgment in part and dissenting in part).  He stated that the purpose of contempt was not to punish any offense against the community, but instead to punish the specific act of disobeying a court order. *Id.* at 742, 113 S.Ct. 2849. Consequently, there was no double jeopardy because the subsequent narrow prosecutions of Dixon and Foster brought under specific criminal statutes were fundamentally different and served an entirely different purpose than the contempt proceedings. *Id.* at 743, 113 S.Ct. 2849.

This tedious review of *Dixon* serves to demonstrate the difficulty of applying *Blockberger* when one of the criminal charges emanates out of a finding of criminal contempt.  The main distinguishing factor between *Dixon* and this case is that *Dixon* involved a *prosecution* for criminal contempt of court when he engaged in conduct which violated his bail terms.  Not so here.  In other words, Brzowski was not given any of the procedural protections afforded to a person being prosecuted for criminal contempt of court.  Rather, the Executive Committee used its inherent authority to fine him.  But nevertheless, the situations are closely similar, and proof that the Supreme Court has applied the *Blockburger* analysis in the context of contempt proceedings.

All of which brings us back to the ill-fitting *Blockburger* test and the question I posed at the beginning: whether the crime charged in Count One of the Indictment (18 U.S.C. § 505) has the same elements as "offense" that led to the criminal fine issued against Brzowski by the Executive Committee?  In an effort to show there were different elements between the contempt in this case and the count under section 505, the

20

government argues that the sanction "was plainly done to address defendant's repeated frivolous filings – filings that not only abused the judicial system but also threatened the functioning of the Court itself." [DE 48 at 10.] According to the Government, the Executive Committee had been using escalating methods over the course of decades to try to control Brzowski's behavior and curtail his frivolous filings, and therefore the elements of that "offense" are different than the statutory indictment under section 505 for using a false judicial signature or tendering into evidence a document with a forged judicial signature. [DE 48 at 11.] Brzowski disagrees with this characterization. Instead, he claims the $25,000 fine was primarily based on his willful fraud of submitting the forged order with Judge Pallmeyer's fake signature. I believe Brzowski has the better of the argument.

Let's look at the Executive Committee's orders, as they progress over time, comparing them to see if it is evident whether the $25,000 fine was, at bottom, issued to punish Brzowski for submitting the fake judicial order with a forged signature or as a reprimand for repeatedly filing frivolous documents. Here is the main sequence: On December 27, 2021, the Executive Committee issued an order "warn[ing] Mr Brzowski that his continued violations of this Court's order may lead to further sanctions including monetary sanctions, additional filing restrictions, or a contempt of court finding." [DE 158 in Case No. 1:07-cv-5613.] About five months later on April 20, 2022, the Executive Committee issued another order, noting he had submitted additional documents after being given a previous warning and not provided a valid explanation

21

as to why he should not be sanctioned "for his continued violations of the Executive Committee order" so they sanctioned him "$500 for submitting frivolous documents after being warned that he would be further sanctioned if he continued to do so." [DE 163 in Case No. 1:07-cv-5613.] About a year later, on March 15, 2023, the Executive Committee issued an order, noting that Brzowski had filed additional documents after being assessed the $500 fine, and expanding the $500 sanction to include the language: "[u]ntil Walter J. Brzowski pays the full amount of the sanction, the Clerk of Court shall return unfiled any papers submitted by Walter J. Brzowski in any case." [DE 171 in Case No. 1:07-cv-5613.]

On July 14, 2023, the Executive Committee issued a rule to show cause, noting Brzowski had continued to file additional documents even after being warned, and ordering him to "respond in writing within 14 days why he should not be additionally sanctioned for failure to comply with the Executive Committee's Orders. Additional sanctions may include additional monetary sanctions, additional filing restrictions, or a contempt of court finding." [DE 177 in Case No. 1:07-cv-5613.] In response to the rule to show cause, Brzowski filed his July 27, 2023 response detailed above containing offensive language aimed at Judge Pallmeyer. [Attached to this case as DE 48-1.] Additionally, a few weeks later on August 11, 2023, Brzowski filed an additional document entitled "Legal Notice to Assert July 14, 2024 Revamped Order as Valid!" which attached the fake order issued by the Executive Committed and containing the forged signature of Judge Pallmeyer. [DE 48-2.] Roughly 6 weeks later, the Executive

Committee issued its order sanctioning him for $25,000. [DE 182 in Case No. 1:07-cv-5613.]

In looking very closely at this order, the Executive Committee first recaps his history (as it did in the previous Executive Orders) noting they had previously sanctioned him $500 for "submitting frivolous documents[.]" *Id.* at 1. The Committee then turned its attention to the reason for issuing its Order. The Committee noted that Brzowski had submitted a signed judicial order to the Court that the Committee concluded was "in fact a fraud." *Id.* The Court went on: "Specifically, it appears that Mr. Brzowski deleted the entire body of the July 14, 2023 order and modified it to state that the Executive Committee relieved him of any monetary sanction and reversed all of the orders since 2007, purportedly because his pleadings are supported by 'equity and merit.'" [*Id.* at 1.] The Executive Committee then noted that the fake order bore the "counterfeit" signature of Chief Judge Pallmeyer. *Id.* The Executive Committee concluded Mr. Brzowski's "conduct in preparing a counterfeit court order *constitutes a willful fraud on the court.*" *Id.* (emphasis added). And because Brzowski failed to provide a valid explanation for why he should not be sanctioned for his misbehavior, the Executive Committee "sanctioned him an additional $25,000 for submitting frivolous documents." *Id.* at 2.

So I ask: Was the $25,000 sanction meant to punish a fraudulent filing, or as a reprimand for repeated frivolous filings? It is difficult to say definitively. It was likely a bit of both. The largest paragraph in the written Executive Order deals with

23

Brzowski's fraudulent filing and the Committee absolutely found the counterfeit order constituted "a willful fraud on the court" so it is difficult to swallow the government's argument that the sanction was *solely* based on Defendant's continued defiance of its orders.  Plus, the timing of the order (a mere 6 weeks after Brzowski's fake order) leads to a sense that this was issued in response to the forged order.

And the very size of the sanction ($25,000) supports the conclusion that it was imposed to punish a fraudulent (and not merely frivolous) filing.  When the Executive Committee first sanctioned Brzowski for making frivolous filings on April 20, 2022, it imposed a modest sanction of $500.  Generally, where an initial fine is insufficient to curb a repeat filer, the second fine will be roughly double or triple the amount of the first. *See, e.g., McBride v. Ya'Cup*, No. 24-2410, 2025 WL 2908567, at *1 (7th Cir. Oct. 14, 2025) (imposing $1,000 fine after previously imposed $500 fine failed to deter frivolous filings); *Smith v. United States Cong.*, No. 22-2592, 2023 WL 3581990, at *2 (7th Cir. May 22, 2023) ("The $2,000 sanction was clearly insufficient to deter Smith's improper conduct, and so now we fine him $5,000 for his continued vexatious litigation."); *In re Nora*, 778 F.3d 662, 667 (7th Cir. 2015) ("Because the $1,000 sanction imposed in *Rinaldi* does not appear to have deterred Nora from continuing to submit frivolous and needlessly antagonistic filings, we now impose an increased sanction of $2,500."). But here, the $25,000 sanction imposed on September 27, 2023 was not two or three times larger than the initial $500 penalty.  It was *fifty* times larger.

Although this is a close call, I do believe the $25,000 sanction was doled out, at

24

least in significant part, based on the conclusion that Brzowski's conduct was "willful fraud" and the Committee was responding to that fraudulent filing, in addition to the multiple other frivolous filings. Because Count One of the Indictment is based on the same conduct that the Executive Committee fined Brzowski for, and Count One charges a lesser included version of the same offense that the Executive Committee already responded to, it is a violation of the Double Jeopardy Clause. Tendering into evidence a forged document knowing the signature of Judge Pallmeyer was false is the only thing needed to establish a violation of section 505 (Count One), but this same proof was sufficient to justify the issuance of the Court's inherent sanction authority. *See United States v. Cowan*, 116 F.3d 1360, 1363 (10th Cir. 1997) ("The purpose of § 505 is to protect the reputation and integrity of the federal courts, their official documents and proceedings . . . The statute applies whenever someone attempts to impugn this integrity by forging a federal judge's signature onto a document in order to make that document appear authentic.").

In sum, just like in *Dixon*, the section 505 charge in Count One of the Indictment is a "species of lesser included offense" of the conduct for which the Executive Committee has already punished Brzowski. *Dixon*, 509 U.S. at 698. Count One of the indictment brought against Brzowski therefore violates the Double Jeopardy Clause.

## Conclusion

For the aforementioned reasons, Defendant Brzowski's motion to dismiss Count One on double jeopardy grounds [DE 34] is GRANTED. The Clerk is ORDERED to

dismiss Count One from the indictment.

As articulated in Court on March 4, 2026, this case REMAINS PENDING on Counts 2-3 and 5-11 on the charge of tendering into evidence a document with a false or counterfeit signature of a judge, and the case remains pending on Count 4 (as originally charged).

SO ORDERED.

ENTERED: May 11, 2026.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT